Filed 8/7/14  In re Luis J. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re LUIS J., a Person Coming Under the Juvenile Court Law. | D065450 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. SJ12810) |
| Plaintiff and Respondent, | |
| v. | |
| D.J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee Lagotta, Judge.  Affirmed in part, reversed in part and remanded.

Christopher R. Booth, under appointment by the Court of Appeal for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

Evangelina Woo, under appointment by the Court of Appeal for Minor.

D.J. appeals an order of the juvenile court terminating her parental rights to her son, Luis J., under Welfare and Institutions Code section 366.26 and placing Luis for

adoption. She contends that the court erred by exercising home state or emergency jurisdiction over Luis pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.; hereinafter referred to as the UCCJEA or the Act).[1] We affirm the order insofar as the juvenile court exercised its emergency jurisdiction, but reverse and remand the matter for further proceedings to determine whether the juvenile court can properly exercise subject matter jurisdiction over Luis in conformity with the UCCJEA.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, D.J. was arrested as she attempted to smuggle 19.82 kilograms of methamphetamine from Mexico, where she had been living, into the United States. Five-month-old Luis was in the car with her at the time.[2]

The San Diego County Health and Human Services Agency (the Agency) filed a section 300, subdivision (b), petition on Luis's behalf, alleging he was at substantial risk of harm as a result of the incident. The juvenile court assumed jurisdiction over Luis and detained him in foster care, although it later placed him with his paternal aunt and uncle in San Diego who expressed a willingness to adopt him.[3] Both D.J. and Luis were U.S.

---

[1] All further statutory references are to the Family Code except as otherwise specified.

[2] D.J. knew she was transporting drugs, but professed that she was carrying marijuana rather than methamphetamine. D.J. was a methamphetamine addict and had previously been incarcerated for attempting to smuggle marijuana into the United States. She had also been stopped at the border on another occasion as she attempted to bring an undocumented child into the country.

[3] By the time Luis was placed with his aunt and uncle, his father had been hospitalized after being seriously assaulted in Mexico. The father later died as a result of his injuries.

citizens and based on the absence of any existing custody orders relating to Luis in Mexico, the Agency believed that the UCCJEA was inapplicable.

Because D.J. was incarcerated, she was unable to engage in visitation or participate in reunification services. At the jurisdiction and disposition hearing, she did not contest the petition's allegations, but requested that the court authorize continued services for her.

Thereafter, the Agency notified the court that the UCCJEA might apply and the court asserted emergency jurisdiction thereunder based on the evidence previously presented in the proceedings. As a result of D.J.'s on-going inability to visit or participate in services, the court ultimately terminated services and set a permanency planning hearing. At that hearing, the court terminated D.J.'s parental rights and ordered Luis placed for adoption. D.J. appeals.

DISCUSSION

1.     *Overview*

The UCCJEA sets forth the exclusive method in California for determining the proper forum in child custody proceedings where multiple jurisdictions have possible authority over a child. (*In re C.T.* (2002) 100 Cal.App.4th 101, 106; § 3402, subd. (d); § 3405, subd. (a) [incorporating foreign countries as well as U.S. states within the purview of the Act].) In the context of dependency proceedings, the UCCJEA is intended to avoid jurisdictional competition and conflict, promote interstate cooperation and the litigation of custody issues where the child and his family have the closest connections, avoid relitigation of another jurisdiction's custody decisions and promote the exchange of information and other mutual assistance between courts of other jurisdictions. (*In re C.T.*, *supra*, at p. 106.)

2.    *Jurisdiction under the Act*

The existence of subject matter jurisdiction under the UCCJEA is determined at the time a child custody action is commenced; such jurisdiction cannot be conferred by stipulation, consent, waiver or estoppel.  (*In re A.C.* (2005) 130 Cal.App.4th 854, 860.)

A.    General Subject Matter Jurisdiction

Under section 3421, a California juvenile court may assume jurisdiction to make an initial determination of custody relating to a child only if:

> (i) California is the child's "home state" at the commencement of the proceedings or, if the child is not present in the state at that time, a parent or person acting as a parent lives here and California was the child's home state within the preceding six months (§ 3421, subd. (a)(1));
>
> (ii) under specified circumstances, a court of another state lacks jurisdiction or has declined to exercise jurisdiction over the child on the ground that California is the more appropriate forum (§ 3421, subd. (a)(2), (3));
>
> (iii) all courts having jurisdiction over the child have declined to exercise jurisdiction on the ground California is the more appropriate forum (§ 3421, subd. (a)(3)); or
>
> (iv) no other state has jurisdiction over the child under the foregoing tests (§ 3421, subd. (a)(4)).

A child's "home state" is the state (or country) in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the child custody proceeding was commenced or, if the child is younger than six months old, the state in which the child lived with such parental figure from birth.  (§ 3402, subd. (g).)

B.    Temporary Emergency Jurisdiction

Even where California is not a child's home state for purposes of the Act, a California court may exercise temporary emergency jurisdiction over that child if he or she is in California and has been abandoned or other emergency circumstances

4

necessitate court action to protect him or her from actual or threatened "mistreatment or abuse." (§ 3424, subd. (a); § 3421, subds. (a) & (b).) Such emergency circumstances exist when there is an immediate risk of danger to the child from being returned to his or her parents. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174-1175.)

A court's custody determination remains in effect under the court's emergency jurisdiction until a child custody proceeding is initiated in a state that has subject matter jurisdiction over the child. (§ 3424. subd. (b).) Thus, although emergency jurisdiction is generally intended to be of limited duration, the juvenile court may exercise its authority under the Act for so long as the circumstances necessitating the dependency proceedings continue to exist. (*In re Nada R, supra,* 89 Cal.App.4th at p. 1175, citing *In re Stephanie M.* (1994) 7 Cal.4th 295, 312.) Nevertheless, an appropriate assumption of emergency jurisdiction under the Act does not confer on the state exercising that jurisdiction the authority to make a permanent custody disposition. (E.g., *In re C.T., supra*, 100 Cal.App.4th at p. 108; § 3424, subd. (b) [providing that if a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under the UCCJEA, a child custody determination "becomes a final determination, if it so provides *and this state becomes the home state of the child*"] [italics added].)

3.    *Application*

Based on the evidence that D.J. and Luis resided in Mexico from the time of Luis's birth until the time of the incident that gave rise to these proceedings, California could not properly assert general subject matter jurisdiction over Luis at the outset of the proceedings. Thus, the Agency appropriately concedes that the juvenile court erred by not contacting and providing notice to Mexican courts so that they could determine

5

whether to assert jurisdiction over, and commence proceedings to protect, Luis.[4]  (See § 3424, subd. (b).)

D.J. also challenges the juvenile court's assumption of temporary emergency jurisdiction over Luis, on two grounds.  She first contends that the court erred in failing to conduct a hearing to determine whether emergency circumstances existed.  (*In re Jorge G.* (2008) 164 Cal.App.4th 125, 132.)  Second, she argues that the evidence failed to establish the existence of an emergency necessitating the juvenile court's involvement on Luis's behalf.

D.J.'s objection that the juvenile court failed to hold an evidentiary hearing on whether an emergency existed under the Act is unavailing.  (See *In re A.C., supra,* 130 Cal.App.4th at p. 864 [concluding that the finding of an emergency can be made only after an evidentiary hearing].)  Here, the juvenile court held more than one evidentiary hearing relating to its exercise of protective jurisdiction over Luis and, despite notice and an opportunity to be heard each time, D.J. did not present any evidence (or even argument) to counter the allegations of the petition that she was unable to provide Luis with food, clothing, shelter and medical treatment.  Based on the evidence before it, the juvenile court found that Luis was at a substantial risk of harm and that it was not possible to safely return Luis to his parents' care.  The juvenile court complied with the requirements of the Act that it conduct an evidentiary hearing before asserting emergency jurisdiction.  (See *In re C.T., supra,* 100 Cal.App.4th at p. 109.)

D.J.'s alternative argument that the evidence failed to establish an emergency justifying the exercise of temporary jurisdiction under the Act is also unpersuasive.  D.J.'s

---

[4]     If Mexico does not assume jurisdiction, California will retain continuing jurisdiction over Luis and the juvenile court's jurisdictional and dispositional orders will become the final determination and California will become his home state.  (§ 3424, subd. (b).)

attempt to use Luis in her efforts to smuggle a substantial amount of methamphetamine across the international border, in and of itself, established a substantial risk of danger to him.  (See *In re A.M.* (2014) 224 Cal.App.4th 593, 599.)  No arrangements were made for Luis's father, or any other family, to take custody of Luis at the time of D.J.'s arrest, essentially leaving Luis abandoned and requiring the juvenile court to assert emergency jurisdiction over him for his protection.  (§§ 3402, subd. (a), 3424, subd. (a); see *In re Jorge G., supra,* 164 Cal.App.4th at pp. 132-133.)

The fact that there were potential family caretakers for Luis, such as his paternal aunt and uncle (with whom the court ultimately placed Luis) or D.J.'s mother in Mexico, did not obviate the existence of the emergency circumstances necessitating the juvenile court's exercise of temporary jurisdiction over Luis.  (§ 3424, subd. (a); compare *In re S.D.* (2002) 99 Cal.App.4th 1068, 1077 [holding that the availability of alternative caregivers to care for the child of an incarcerated parent as of the jurisdictional hearing is sufficient to eliminate the juvenile court's jurisdiction over the child under Welf. & Inst. Code, § 300 even if the parent had not actually made such arrangements].)[5]

The juvenile court properly assumed emergency jurisdiction over Luis and continued to exercise that jurisdiction as a result of ongoing risks of harm to him.

---

[5]    To the extent that D.J. also suggests that any emergency circumstances existing at the time the dependency petition was filed on Luis's behalf were obviated by the Agency's subsequent placement of Luis with his paternal aunt and uncle, we reject that suggestion.  The propriety of exercising emergency jurisdiction over a child is determined at the outset of the proceedings, not at some later point.  (*In re A.C., supra,* 130 Cal.App.4th at p. 860.)  The fact that, in this case, the court was not notified of the UCCJEA's applicability until well into the proceedings does not invalidate that exercise of jurisdiction where, as here, the circumstances existing at the outset of these proceedings established an emergency requiring its intervention.

## DISPOSITION

The order is affirmed as to the juvenile court's exercise of emergency jurisdiction, but is reversed and remanded with directions to the juvenile court to contact and provide notice to Mexican authorities to determine whether Mexico wishes to assume jurisdiction and commence proceedings to protect Luis. If a Mexican court does not take action on Luis's behalf after contact and notice, the juvenile court's jurisdictional and dispositional orders shall remain in effect in accordance with section 3424, subdivision (b). If a Mexican court assumes jurisdiction and commences proceedings, the juvenile court is ordered to proceed in conformity with the UCCJEA and void its order terminating D.J.'s parental rights and placing Luis for adoption.

 

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

8